Ronald LoDico et al., Respondents, v Robert A. Caputi, Appellant, et al., Defendants.

Fourth Department, July 10, 1987

## APPEARANCES OF COUNSEL

*Damon & Morey (Barbara L. Schifeling* and *Carmen P. Tarantino* of counsel), for appellant.

*Gordon, Feldman & Cooper (Timothy J. Cooper* of counsel), for respondents.

## OPINION OF THE COURT

Callahan, J.

Defendant Robert A. Caputi, M.D., appeals from an order which denied his motion seeking to dismiss the complaint in

this medical malpractice action as against him for failure to state a cause of action.

The essential facts are not in dispute. On or about May 5, 1983, plaintiff Ronald LoDico, during the course of his employment by the Dunkirk and Fredonia Telephone Company, was using a hand scraper to remove some old paint when he noted the sudden onset of numbness in his right thumb and first and second fingers. Several days later, he noted that his entire right arm was weak and that there was a tingling in his fingers. The arm and hand symptoms continued to persist and several days later, he noted pain in the posterior of his neck on the right side.

On May 9, 1983, plaintiff sought medical treatment from an osteopathic physician. This doctor, who is also a defendant in this malpractice action, diagnosed plaintiff's condition as a cervical dorsal strain and treated it with oral medication as well as osteopathic manipulation on a weekly basis. On June 29, 1983, plaintiff was seen in consultation by a neurologist. The neurologist, who is also named as a defendant in this malpractice action, found no neurological abnormalities and no apparent explanation for plaintiff's complaints.

Since plaintiff was not able to work after the onset of these symptoms in May 1983, he filed for workers' compensation benefits. Later he was directed by his employer's workers' compensation carrier, the State Insurance Fund, to appear for an examination by defendant, Dr. Robert Caputi. As a postscript to the notice of appointment, the carrier instructed Dr. Caputi to "[p]lease examine the above captioned claimant and obtain a complete accident and medical history. Please render your opinion regarding causally related disability, if any, and degree of same. Also, please comment on necessity for further continued treatment."

On September 9, 1983 Dr. Caputi examined plaintiff as directed. After conducting the examination, he forwarded a report to the State Insurance Fund stating that in his opinion, plaintiff had recovered from his alleged injury of May 1983, has no evidence of intervertebral disc injury or disease, or peripheral nerve damage of any type, and should be able to return to his usual work without restrictions or limitations. Subsequent to this examination, plaintiff was diagnosed as suffering from a brainstem tumor.

Plaintiff commenced the instant medical malpractice action against several physicians, including Dr. Caputi, alleging that

they committed medical malpractice in failing to diagnose this brainstem tumor. Defendant Caputi answered and raised various affirmative defenses, including, *inter alia,* that there was never any physician-patient relationship between him and the plaintiff.

Defendant Caputi then served a motion, pursuant to CPLR 3211 (a) (7), seeking to dismiss plaintiff's complaint as against him for failure to state a cause of action as there was no physician-patient relationship at the time of the alleged medical malpractice. Dr. Caputi submitted an affidavit in which he averred that he examined the plaintiff at the request of the workers' compensation carrier; that the examination was not conducted for the purpose of treatment or diagnosis; and, therefore, there was no physician-patient relationship sufficient to support a claim for medical malpractice. Plaintiff submitted an affidavit in opposition in which he argued that this court's ruling in *Twitchell v MacKay* (78 AD2d 125) is controlling and supports the finding of a physician-patient relationship under the facts of this case. Special Term concurred with plaintiff's position and denied the application to dismiss the complaint against Dr. Caputi *(Lodico v Cohn,* 132 Misc 2d 866).

Ordinarily, recovery for malpractice or negligence against a doctor is allowed only where there is a relationship of doctor and patient as a result of a contract, express or implied, that the doctor will treat the patient with proper professional skill, and there has been a breach of professional duty to the patient *(Hoover v Williamson,* 236 Md 250, 203 A2d 861, 10 ALR3d 1064; *Keene v Wiggins,* 69 Cal App 3d 308, 313, 138 Cal Rptr 3, 6). Nothing expressed in our decision in *Twitchell v MacKay (supra)* is contrary to this principle. In *Twitchell,* the plaintiff went to Dr. MacKay at the request of John Hancock Insurance Company for the purpose of an examination. We found that MacKay, acting as a doctor, was held to perform his common-law duty to use reasonable care and his best judgment in exercising his skill as a physician. Because he allegedly carried out his function during the course of his examination in a negligent or improper fashion, causing injury to Twitchell, he could properly be charged with medical malpractice.

*Twitchell (supra)* is not controlling in the circumstances of this case. Here, the plaintiff makes no claim that he suffered any bodily injury during the course of his physical examination or that Dr. Caputi made any oral representations to him

with regard to the medical findings. Plaintiff did not employ defendant nor does he contend he sought medical advice or treatment from him. Dr. Caputi was employed by the State Insurance Fund to evaluate the physical condition of plaintiff and to make a report as to the extent of his disability. Furthermore, these types of examinations are limited in scope and without the benefit of ordering supplemental tests.

Accordingly, where a doctor conducts an examination of an injured employee solely for the purpose of rating the injury for the employer's insurance carrier in a workers' compensation proceeding, neither offers nor intends to treat, care for or otherwise benefit the person examined and has no reason to believe the person examined will rely on this report, the doctor is not liable to the person being examined for failure to properly diagnose a latent brain tumor (see, Johnston v Sibley, 558 SW2d 135 [Tex Civ App]).

Accordingly, the order should be reversed and defendant's motion should be granted.

GREEN, J. (dissenting). I must dissent. The sole ground alleged on behalf of defendant Caputi's motion to dismiss plaintiff's complaint (see, CPLR 3211 [a] [7]) is that there was no physician-patient relationship between the defendant and the injured plaintiff at the time of the alleged medical malpractice. This claim is based upon defendant's assertion that an examination by a physician at the request of an insurance carrier or workers' compensation carrier does not constitute examination for treatment and, absent physical injury committed in the performance of the examination, is not enough to form a physician-patient relationship sufficient to support a claim for medical malpractice.

This court specifically rejected an identical claim over six years ago. We stated: "Plaintiffs would have us apply the narrow test of treatment by a physician, or examination for the purposes of treatment, in order to find that a case involves medical malpractice instead of simple negligence. We decline to do so. Such an interpretation is too constricting and fails to recognize the realities of the relationship that arise, however briefly, when a physician is in the process of exercising his profession and utilizing the skills which he has been taught in examining, diagnosing, treating or caring for another person." (Twitchell v MacKay, 78 AD2d 125, 128.)

Moreover, the fact that a physician's services are rendered

gratuitously, or at the request of someone other than the patient, does not eliminate or diminish the physician's liability *(see, DuBois v Decker,* 130 NY 325). A physician's duty extends not only to provide proper treatment but also to make an accurate diagnosis upon which treatment may be based *(see, Pike v Honsinger,* 155 NY 201, 209).

Mr. LoDico was examined by Dr. Caputi at the request of the State Insurance Fund. Dr. Caputi was directed to examine Mr. LoDico, to obtain his complete medical history, to render an opinion whether he could return to work and to comment on the necessity for further continued treatment. Following an examination and review of the medical records, Dr. Caputi concluded that Mr. LoDico had no evidence of peripheral nerve damage or disease of any type, that he could resume his usual work without restriction and that there was no indication for continued treatment directed toward Mr. LoDico's neck, back or upper extremities.

In his bill of particulars, however, plaintiff alleged that he suffered a brainstem tumor which existed at the time of Dr. Caputi's examination and which was not removed until one year following that exam, causing plaintiff to suffer permanent injuries, including damage to cranial nerves, Bell's palsy and loss of hearing. Plaintiff alleged that Dr. Caputi was negligent in misdiagnosing his true condition and in failing to order proper and complete medical and mechanical tests during the course of the examination. Assuming, as we must, the truth of these allegations *(see, Cohn v Lionel Corp.,* 21 NY2d 559, 562), and recognizing the existence of a physician-patient relationship between Dr. Caputi and Mr. LoDico as we must from the aforementioned language in *Twitchell v MacKay (supra),* plaintiff's complaint states a valid cause of action for medical malpractice against Dr. Caputi. Accordingly, Special Term *(Lodico v Cohn,* 132 Misc 2d 866) properly denied Dr. Caputi's motion to dismiss the complaint and the order on appeal should be affirmed.

DILLON, P. J., BALIO and DAVIS, JJ., concur with CALLAHAN, J.; GREEN, J., dissents and votes to affirm in a separate opinion.

Order reversed, on the law, without costs, and motion granted.