916 P.2d 1105

**Sara Louise HAFNER,
Plaintiff/Appellant,**

v.

**John T. BECK, Ph.D.,
Defendant/Appellee.**

No. 2 CA–CV 95–0078.

Court of Appeals of Arizona,
Division 2,
Department A.

Nov. 9, 1995.

Review Denied May 21, 1996.

Miller, Pitt & McAnally, P.C. by Philip J. Hall, Tucson, for Plaintiff/Appellant.

Kimble, Gothreau & Nelson, P.C. by David F. Toone, Tucson, for Defendant/Appellee

## OPINION

PELANDER, Judge.

This case presents an issue of first impression in Arizona: whether a health care provider who performs an independent medical examination (IME) on a workers' compensation claimant at the carrier's request can be liable to the claimant for negligently performing the exam or reporting the results to the carrier. Concluding that liability could not attach, the trial court granted summary judgment for defendant/appellee John Beck, Ph.D. Plaintiff Sara Hafner appeals from the adverse summary judgment, and for the reasons stated below, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

After being injured in the course and scope of her employment, Hafner filed a workers' compensation claim, alleging physical and psychological injury. Beck conducted an in-

dependent psychological examination of Hafner at the request of her employer's workers' compensation carrier, the State Compensation Fund (Fund). Contrary to the opinions of Hafner's treating psychologist, Robert Crago, Ph.D., Beck concluded from his exam, and reported to the Fund, that she required no further psychological treatment and had no psychological impairment related to her industrial accident. Relying on Beck's report, the Fund ceased providing temporary compensation benefits and ongoing psychotherapy treatment for several months, allegedly causing not only an interim loss of those benefits but also additional consequential damages.

In her complaint, Hafner alleged that Beck knew or should have known that the Fund would rely on his opinions, that in performing the IME, he failed to use the proper degree of care, and that he "negligently reported incorrect information" about her to the Fund.[1] Hafner's opposition to Beck's motion for summary judgment included an affidavit from Dr. Crago, in which Crago posited the various professional and ethical duties of psychologists. Hafner contended that Beck's IME "was negligently performed and fell below the standard of care for psychologists;" the results he reported to the Fund "were false, misleading, incorrect and unreliable;" he "administered a battery of psychological tests under circumstances which were generally unacceptable; he used experimental, invalidated or inadequately validated testing protocols; he reported data from tests not administered; he failed to obtain appropriate informed consent with respect to the administration of the protocols; and he performed an inadequate interview."

In granting summary judgment for Beck, the trial court concluded that any duty Beck had in evaluating Hafner was owed to the Fund, which hired him, and that he owed no duty to Hafner because no doctor/patient relationship existed between them. This appeal followed.

## STANDARD OF REVIEW

On appeal from a summary judgment we must determine *de novo* whether

---

1. Hafner does not claim that Beck's evaluation or testing itself actually harmed or aggravated her condition, either physically or psychologically.

there are any genuine issues of material fact and whether the trial court erred in applying the law. *United Bank v. Allyn*, 167 Ariz. 191, 805 P.2d 1012 (App.1990). We view the evidence in a light most favorable to the party against whom summary judgment was entered, and give all favorable inferences fairly arising from the evidence to that party. *Angus Medical Co. v. Digital Equip. Corp.*, 173 Ariz. 159, 840 P.2d 1024 (App.1992). "Questions of law decided by the trial court are reviewed *de novo.*" *Aldabbagh v. Arizona Dept. of Liquor Licenses & Control*, 162 Ariz. 415, 418, 783 P.2d 1207, 1210 (App. 1989).

## DISCUSSION

Hafner contends that, as a matter of law, Beck owed her a duty of reasonable care in performing the IME and accurately reporting the results and that she has an actionable negligence claim for his alleged breach of that duty. As Division One of this court has stated:

> The first question in this action, as in any negligence action, is whether [defendant] owed any duty of care to [plaintiff]. That is, was the relationship of the parties "such that [defendant was] under an obligation to use some care to avoid or prevent injury to [plaintiff]"? Whether a defendant owes a duty to a plaintiff generally presents an issue of law for the trial court and is therefore appropriate for summary judgment.

*Bellezzo v. State*, 174 Ariz. 548, 550, 851 P.2d 847, 849 (App.1992) (citation omitted).

One who engages in negligent conduct is not automatically subject to potential legal liability. Rather, there first must be a duty recognized by law. *See, e.g., West v. Soto*, 85 Ariz. 255, 261, 336 P.2d 153, 156 (1959) ("There must be a duty owed and a breach of that duty before one may be charged with a negligent violation of that

duty."); *Rudolph v. Arizona B.A.S.S. Fed'n*, 182 Ariz. 622, 898 P.2d 1000, 1002 (App.1995) ("A defendant who does not owe a duty to a plaintiff cannot be liable for the plaintiff's injury even if the defendant acted negligently.").

A medical malpractice suit such as this will lie only when there was a doctor/patient relationship creating a duty to act for the patient's benefit. *Ornelas v. Fry*, 151 Ariz. 324, 329, 727 P.2d 819, 824 (App.1986). As a New York court has observed:

> Ordinarily, recovery for malpractice or negligence against a doctor is allowed only where there is a relationship of doctor and patient as a result of a contract, express or implied, that the doctor will treat the patient with proper professional skill, and there has been a breach of professional duty to the patient.

*LoDico v. Caputi*, 129 A.D.2d 361, 363, 517 N.Y.S.2d 640, 641 (1987). Because no such doctor/patient relationship existed between Beck and Hafner, the trial court correctly ruled that Beck owed no duty to Hafner under these circumstances.[2]

The concept of "reasonable care under the circumstances," which Hafner mistakenly equates with duty, pertains to the standard of care with which a person is required to conform if, but only if, that person has a duty to the claimant. *Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 356, 706 P.2d 364, 368 (1985). We do not understand the law to be that one owes a duty of reasonable care at all times to all people under all circumstances. The common law has not been stretched that far yet, and we envision considerable danger in doing so in this context. If an IME practitioner's evaluations, opinions, and reports could lead not only to vehement disagreement with and vigorous cross-examination of the practitioner in the claims or litigation process, but also to his or her potential liability for negligence, the resulting chilling effect could be severe. To

2. We do not agree with Hafner's complaint that this ruling means that IMEs "can be done with impunity," no matter how egregious the examiner's conduct. For example, IME practitioners are not immune from liability for any intentional tort they may commit. In addition, administrative action with the appropriate licensing board or agency is available to combat improper or illegal practices by a health care provider. Indeed, Hafner and Crago complained to the state Board of Psychologist Examiners about the nature and results of Beck's IME, which resulted in a professional conduct review of his actions.

permit such an action by expanding the concept of duty in this type of case would be, at best, ill-advised. At worst, the fears expressed in *Davis v. Tirrell*, 110 Misc.2d 889, 895–96, 443 N.Y.S.2d 136, 140 (Sup.Ct.1981) may be realized:

> To permit such an action would make it impossible to find any expert witness willing to risk a lawsuit based on his testimony as to his opinions and conclusions before any tribunal. And such cause of action if permitted would lead to an endless stream of litigation wherein defeated litigants would seek to redeem loss of the main action by suing to recover damages from those witnesses whose adverse testimony might have brought about the adverse result.

We do not agree with Hafner's contention that the trial court erroneously "confused the existence of a duty with the details of the standard of conduct," nor that its ruling was incompatible with *Lasley v. Shrake's Country Club Pharmacy*, 179 Ariz. 583, 880 P.2d 1129 (App.1994). The trial court in *Lasley* had ruled that the pharmacist was entitled to summary judgment because he "had no duty to warn [plaintiff] or his physician of the potentially addictive nature of drugs legitimately prescribed for [plaintiff]." *Id.* at 585–86, 880 P.2d at 1131–32. That ruling was reversed because it "confuse[d] the concept of duty with that of standard of care." *Id.* at 586, 880 P.2d at 1132.

Unlike the situation in *Lasley*, neither Beck's position nor the trial court's ruling was based on whether Beck was or was not obligated to engage in specific conduct, e.g., administering or refraining from administering certain psychological tests, using validated testing protocols, or accurately reporting test results. Rather, the trial court correctly ruled that Beck's duty to meet the professional standard of care in conducting the

IME and in preparing his report ran only to the Fund, which requested his services, and not to the examinee. That ruling was wholly consistent with our supreme court's recognition that resolution of duty issues involves determinations "of the relation between individuals which impose upon one a legal obligation for the benefit of the other." *Coburn v. City of Tucson*, 143 Ariz. 50, 52, 691 P.2d 1078, 1080 (1984) (quoting W. Prosser & W. Keeton, *The Law of Torts*, § 53 at 356 (5th ed. 1984)).

A number of courts have rejected arguments similar to those Hafner presents here, concluding that workers' compensation claimants cannot maintain medical malpractice actions against physicians who perform IMEs as part of the claims process, because there is no doctor/patient relationship and no concomitant duty.[3] Illustrative of that majority view is the following discussion by a Texas court:

> Accordingly, we hold that where a doctor, as here, conducts an examination of an injured employee solely for the purpose of evaluating the employee's disability for the insurance carrier after a claim for workmen's compensation has been filed, and the doctor neither offers nor intends to treat, care for or otherwise benefit the employee and does not injure him during the course of the examination, the doctor is not liable for negligence in a suit for medical malpractice. His duty to use a professional standard of care in making the examination and in preparing the report runs only to the party requesting it.

*Johnston v. Sibley*, 558 S.W.2d 135, 137–38 (Tex.Civ.App.1977). We are persuaded by and therefore elect to follow the reasoning and conclusion of those decisions. To the extent plaintiff's cited cases might suggest a contrary minority view, we refuse to adopt it.[4]

---

**3.** *See, e.g., Keene v. Wiggins*, 69 Cal.App.3d 308, 313–14, 138 Cal.Rptr. 3, 7–8 (1977); *Rogers v. Horvath*, 65 Mich.App. 644, 647, 237 N.W.2d 595, 597 (1975); *Henkemeyer v. Boxall*, 465 N.W.2d 437, 439 (Minn.Ct.App.1991); *LoDico*, 129 A.D.2d at 363–64, 517 N.Y.S.2d at 641–42; *Craddock v. Gross*, 350 Pa.Super. 575, 581, 504 A.2d 1300, 1303 (1986); *cf. Cook v. Optimum/Ideal Managers, Inc.*, 130 Ill.App.3d 180, 189, 84 Ill.Dec. 933, 939–40, 473 N.E.2d 334, 340–41 (1984).

**4.** *See Ewing v. St. Louis–Clayton Orthopedic Group*, 790 F.2d 682 (8th Cir.1986); *Smith v. Pasquarella*, 201 A.D.2d 782, 607 N.Y.S.2d 489 (1994); *Armstrong v. Morgan*, 545 S.W.2d 45 (Tex.Civ.App.1976). Both *Ewing* and *Armstrong* have been sharply criticized, *see Felton v. Schaeffer*, 229 Cal.App.3d 229, 236 n. 3, 279 Cal.Rptr.

We also reject Hafner's contention that determination of duty "is a matter for expert testimony," and that Dr. Crago's affidavit was sufficient to establish that Beck owed and breached a duty of professional care to her, thereby precluding summary judgment. Hafner's treating psychologist/expert witness cannot create a duty through his opinions and beliefs, when the law does not recognize any such duty. *Town of Oro Valley v. Superior Court*, 150 Ariz. 48, 50, 721 P.2d 1175, 1177 (App.1986). Although standards for experts' qualifications and admissibility of their opinions have been stretched considerably, we have not yet reached the point when experts can dictate the law.

Finally, Hafner asserts that a duty should be recognized here because, unlike an IME performed under Ariz.R.Civ.P. 35, 16 A.R.S., or Ariz.Admin.Code R20–5–114, Rules of Procedure for Worker's Compensation Hearings, Beck conducted the IME in a nonjudicial and nonadversarial setting pursuant to A.R.S. § 23–1026. An exam conducted under that statute, according to Hafner, is simply "a method for the carrier to determine and direct an appropriate course of treatment," carrying with it a duty of good faith and fair dealing owed by the carrier, and its selected IME practitioner, to the injured employee/claimant. Although Hafner characterizes her relationship with the Fund as one of insured/insurer, the precise nature of that relationship is neither material nor controlling to our analysis and conclusion. The lack of duty Beck owed Hafner, based on their limited relationship, "is not predicated on an adversarial interest." *Wilson v. Winsett*, 828 S.W.2d 231, 232 (Tex.Ct. App.1992).

Hafner had her own treating doctors and did not submit to Beck's evaluation for purposes of treatment or medical advice, but only because she was required to do so as part of the workers' compensation claims process. Even assuming that Beck's conduct fell below the standard of care for psychologists, it was a breach of duty owed to the Fund, not to Hafner.

Affirmed.

LIVERMORE, P.J., and FERNANDEZ, J., concur.

713, 716 n. 3 (1991), and *Smith* is distinguishable because the physician in that case allegedly "injured plaintiff, both physically and emotionally, and aggravated an existing injury during the course of a physical examination conducted by defendant." 201 A.D.2d at 782, 607 N.Y.S.2d at 490.