NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

JAN 20 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAURICIO FLORES; CLAUDIA
FLORES, a married couple,

Plaintiffs-Appellants,

v.

SKYWEST, INC., a Utah Corporation,

Defendant-Appellee,

and

AMERICAN AIRLINES, INC., a foreign
Corporation; AMERICAN EAGLE
AIRLINES, INC., a foreign Corporation;
PIEDMONT AIRLINES, INC., a foreign
Corporation; UNKNOWN PARTY, named
as John Doe Captain; UNKNOWN
PARTIES, named as John Doe's 1-10, John
Doe Corporations 1-10,

Defendants.

No.    20-17393

D.C. No. 2:18-cv-04175-MTL

MEMORANDUM*

Appeal from the United States District Court
for the District of Arizona
Michael T. Liburdi, District Judge, Presiding

Argued and Submitted November 17, 2021
Phoenix, Arizona

---

*        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: MURGUIA, Chief Judge, and CLIFTON and BRESS, Circuit Judges.
Dissent by Judge BRESS

Mauricio Flores, a ramp agent at Phoenix Sky Harbor Airport, appeals the district court's grant of summary judgment to SkyWest Airlines ("SkyWest") on his negligence claims. We review the district court's grant of summary judgment de novo, *Howard v. HMK Holdings, LLC*, 988 F.3d 1185, 1189 (9th Cir. 2021), and have jurisdiction under 28 U.S.C. § 1291. The question in this case is whether Arizona would recognize that SkyWest (through its pilot, Brenden Flygare) owed a duty of care to Flores to avoid subjecting him to an unreasonable risk of harm when Flygare allegedly ordered or encouraged Flores to open a pressurized aircraft door, resulting in injuries to Flores. As no Arizona case answers this question, we must predict how the Arizona Supreme Court would resolve it. *See, e.g.*, *In re Bartoni-Corsi Produce, Inc.*, 130 F.3d 857, 861 (9th Cir. 1997). Because we conclude that Arizona would not recognize such a duty under Arizona law, we affirm.

To recover on a negligence claim in Arizona, a plaintiff must first prove "a duty requiring the defendant to conform to a certain standard of care." *Sanders v. Alger*, 394 P.3d 1083, 1085 (Ariz. 2017) (quoting *Gipson v. Kasey*, 150 P.3d 228, 232 (Ariz. 2007)). Whether a duty exists is a pure legal question that is "to be determined *before* the case-specific facts are considered." *Quiroz v. ALCOA Inc.*, 416 P.3d 824, 828 (Ariz. 2018) (quoting *Gipson*, 150 P.3d at 232). Arizona has

developed a particular framework for evaluating whether to recognize a particular legal duty in tort. Most notably, "foreseeability is not a factor to be considered by courts when making determinations of duty." *Quiroz*, 416 P.3d at 828 (quoting *Gipson*, 150 P.3d at 231). Instead, "duty in Arizona is based on either [1] recognized common law special relationships or [2] relationships created by public policy." *Id.* at 829.

Under Arizona law, SkyWest did not owe Flores a duty based on any recognized special relationship. "Duties based on special relationships may arise from several sources, including special relationships recognized by the common law, contracts, or 'conduct undertaken by the defendant.'" *Id.* (quoting *Gipson*, 150 P.3d at 232). Examples include such recognized relationships as landowner-invitee or tavern owner-patron. *Gipson*, 150 P.3d at 232. A duty based on a special relationship also requires a "preexisting relationship[]." *Quiroz*, 416 P.3d at 829.

Flores has not shown that the relationship between a pilot and a gate agent is sufficiently recognized such that Arizona would deem it a special relationship. Neither *Stanley v. McCarver*, 92 P.3d 849, 854 (Ariz. 2004), nor *Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.*, 6 P.3d 315, 321 (Ariz. Ct. App. 2000), on which Flores relies, answer this question. While Flores points to the facts surrounding the incident, Arizona has determined that "[a] fact-specific analysis of the relationship between the parties is a problematic basis for determining if a duty of care exists."

3

*Gipson*, 150 P.3d at 232. Even so, here Flores had been trained by his employer, Piedmont Airlines, on safety measures around the aircraft, particularly with respect to pressurized doors much like the one giving rise to this litigation. Piedmont was in charge of providing ramp services, and a Piedmont employee had improperly pressurized the plane. SkyWest's pilot was outside the airplane when the incident occurred and likely entrusted Flores to open the pressurized door based on Flores's expertise. Flores's reliance on the facts of his case is therefore unpersuasive, even assuming we could consider the particular facts at issue in evaluating the duty question.

SkyWest also did not owe a duty to Flores created by public policy. The Arizona Supreme Court has said that a "[p]ublic policy creating a duty is based on our state and federal statutes and the common law," but that "[i]n Arizona, our primary source for identifying a duty based on public policy is our state statutes." *Quiroz*, 416 P.3d at 829–30. When analyzing whether a statute creates a duty, Arizona courts ask whether the plaintiff "is within the class of persons to be protected by the statute and [whether] the harm that occurred . . . is the risk that the statute sought to protect against." *Id*. at 829 (quoting *Gipson*, 150 P.3d at 233). But "in the absence of a statute, [Arizona courts] exercise great restraint in declaring public policy," *id*. at 830, because "[t]he declaration of public policy is primarily a legislative function," *id*. (quoting *Ray v. Tucson Medical Ctr.*, 230 P.2d 220, 229

4

(Ariz. 1951)) (internal quotation marks omitted).

In this case, the regulations and statutes that Flores cites were designed to protect against negligence in the context of aircraft use, navigation, and piloting. The applicable state statutes identify federal regulations as a relevant consideration in determining the safe operation of an aircraft. *See, e.g.*, A.R.S. § 28-8280(A). FAA regulations define "operate, with respect to aircraft" to mean "use, cause to use or authorize to use aircraft, for the purpose (except as provided in § 91.13 of this chapter) of air navigation including the piloting of aircraft, with or without the right of legal control." 14 C.F.R. § 1.

Flores relies on federal regulation 14 C.F.R. § 91.13 as "the applicable regulation" for determining whether SkyWest, through Flygare, owed him a duty of care. Section 91.13 provides for the careless or reckless operation of an aircraft:

> (a) Aircraft operations for the purpose of air navigation. No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another.
>
> (b) Aircraft operations other than for the purpose of air navigation. No person may operate an aircraft, other than for the purpose of air navigation, on any part of the surface of an airport used by aircraft for air commerce (including areas used by those aircraft for receiving or discharging persons or cargo), in a careless or reckless manner so as to endanger the life or property of another.

14 C.F.R. § 91.13(a), (b).[1]  Cases construing these federal provisions have concluded that they are "principally concerned with safety in connection with operations associated with flight."  *E.g.*, *Elassaad v. Independence Air, Inc.*, 613 F.3d 119, 128 (3d Cir. 2010).  Indeed, the Third Circuit panel in *Elassaad* held that the aircraft in that case was not "operated" pursuant to § 91.13(a) because, "[b]y the time of the accident, the aircraft had landed, taxied to the gate, and come to a complete stop; the crew had already opened the door and lowered the plane's stairs; and all of the passengers other than Elassaad had deplaned."  *Id.* at 130.  The court therefore found

---

[1] The Third Circuit panel explains the proper interpretation of § 91.13(a):

> The definitions provided by the Aviation Act also help to elucidate the meaning of § 91.13(a). The statute defines "'operate aircraft' and 'operation of aircraft' [to] mean using aircraft for the purposes of air navigation, including—(A) the navigation of aircraft; and (B) causing or authorizing the operation of aircraft with or without the right of legal control of the aircraft." 49 U.S.C. § 40102(a)(35).  Although the statute does not define "air navigation," it does define two related terms: "navigate aircraft" and "air navigation facility."  "'[N]avigate aircraft' and 'navigation of aircraft' include piloting aircraft." § 40102(a)(33). "'[A]ir navigation facility'... includ[es]—(A) a landing area; (B) a light; (C) apparatus or equipment for distributing weather information, signaling, radio-directional finding, or radio or other electromagnetic communication; and (D) another structure or mechanism for guiding or controlling flight in the air or the landing and takeoff of aircraft." § 40102(a)(4).

*Elassaad v. Independence Air, Inc.*, 613 F.3d 119, 129–30 (3d Cir. 2010).  We do not "focus extensively" on *Elassaad's* treatment of 14 C.F.R. § 91.13(a) as the dissent posits simply because we clarify the Third Circuit's discussion of 14 C.F.R. § 91.13 in its entirety.

"that the aircraft was not being operated for the purpose of air navigation at the time of Elassaad's accident, and thus . . . the standard of care provided by § 91.13(a) did not apply to this situation." *Id.* at 130. Similarly here, because no passengers were on or around the plane, and because the plane had not been prepared for navigation— or even entered for that matter—Flygare was not "operating" the aircraft pursuant to § 91.13(a).

The dissent reads *Elassaad* to support the contention that opening the door to an aircraft imparts movement to that aircraft within the meaning of § 91.13(b). But as the dissent itself notes, the panel explicitly stated that it would not reach this issue: "We do not reach the issue of whether other activities that occur while a plane is on the ground, such as taxiing or the process of *opening an aircraft's doors*, would constitute 'operations . . . .'" *Elassaad*, 613 F.3d at 130 n.14 (emphasis added). And regardless, the panel's decision in *Elassaad* does not support the view that opening a door necessarily moves the body of the aircraft. As noted in *Elassaad*, the phrase "operate an aircraft other than for the purpose of air navigation" was used "in order to clearly limit the applicability of the rule to *those acts which impart some physical movement to the aircraft, or involve the manipulation of the controls of the aircraft* such as starting or running an aircraft engine." *Id.* at 130 (quoting Careless or Reckless Ground Operation of Aircraft, 32 Fed. Reg. 9640, 9640–41 (July 4, 1967)). This *clear limitation* appears focused on the controls that a pilot would normally use

7

when moving or preparing for the movement of a plane, hence the references, "physical movement of the aircraft" and "controls of the aircraft such as starting or running an aircraft engine." Careless or Reckless Ground Operation of Aircraft, 32 Fed. Reg. 9640, 9640–41. The regulations as written are therefore clear that operating an aircraft pertains to aircraft controls and "navigation," which does not encompass opening a pressurized door, particularly when this task is within the scope of one's employment. Because A.R.S. § 28-8280(A) effectively mirrors the federal regulations, we similarly do not read it to cover the pilot's conduct near the airplane at the ramp.

Nor is *United States v. St. Amour*, 886 F.3d 1009 (11th Cir. 2018) (per curiam) helpful in determining the definition of "operate," as it does not pertain to § 91.13 whatsoever, which is "the applicable regulation" at the center of Flores's argument. But even considering *St. Amour* solely because it cites the overarching 14 C.F.R. § 1.1, the case is inapposite; the panel found that pilot Guy St. Amour operated the aircraft in that case because he "started the engine of" the aircraft "and taxied to a maintenance hangar where he refueled the aircraft to prepare for a flight the next day." *Id.* at 1015. Indeed, in reaching this conclusion, the Eleventh Circuit panel referenced "[a] long line of administrative decisions" in which pilots were found to operate aircrafts because they, at a minimum, started or attempted to start an aircraft engine. *Id.* at 1014–15. Nothing in *St. Amour* or *Elassaad* suggests that opening an

8

aircraft door constitutes "operating" that aircraft; in both cases, it is not the imminence of the flight that is key, but the pilot's operation of controls associated with navigation.

Lastly, though A.R.S. § 28-8273 provides that a pilot and the pilot's employer may be responsible for damage caused by a pilot's negligence "either in controlling the aircraft or while giving instructions to another person," the Arizona Court of Appeals has observed that "[t]he thrust" of this section "is to make a pilot responsible for his negligence while *operating* an aircraft," *National Union Fire Ins. Co. v. Rick*, 654 P.2d 56, 59 (Ariz. Ct. App. 1982) (emphasis added), similar to the FAA regulations and A.R.S. § 28-8280(A). Properly considered, a pilot generally is not "operating" a plane when standing outside of it and neither navigating nor piloting the aircraft. *See* 14 C.F.R. § 91.13(b).

Because under Arizona law SkyWest had no duty of care based on either a special relationship or public policy, the district court's grant of summary judgment to SkyWest is

**AFFIRMED.**

9

*Flores v. SkyWest, Inc.*, No. 20-17393

BRESS, Circuit Judge, dissenting.

I respectfully dissent because I believe Arizona would recognize a duty of care between a pilot and a ramp agent for the pilot's alleged negligence in connection with manipulating the plane at the gate, which resulted in serious injuries to the plaintiff.

Arizona recognizes legal duties based on public policy, as set forth in Arizona and federal statutes and regulations. *See Quiroz v. ALCOA Inc.*, 416 P.3d 824, 829–30 (Ariz. 2018). Here, an Arizona statute provides that

A. A pilot is responsible for damage to a person or property that is caused by aircraft directed by the pilot or under the pilot's control and that results from the negligence of the pilot, either in controlling the aircraft *or while giving instructions to another person*.

B. If the pilot is the agent or employee of another, both the pilot and the pilot's principal or employer are responsible for the damage.

A.R.S. § 28-8273 (emphasis added). Although no Arizona case has authoritatively construed this statute, by its plain text it would seem to apply here. When a commercial pilot is near the plane he is about to fly and allegedly giving instructions to others as to whether or how to manipulate a critical feature of the plane, it is most natural to treat the plane as being under the pilot's direction or control, especially given the pilot's preeminent role in and around planes while at the airport.

Another Arizona statute similarly provides:

> A person who operates an aircraft in the air, *on the ground* or on the water in a careless or reckless manner that endangers the life or property of another is guilty of a class 1 misdemeanor. In determining whether the operation was careless or reckless, the court shall consider the standards for safe operation of aircraft prescribed by federal statutes or regulations governing aeronautics.

A.R.S. § 28-8280(A) (emphasis added). This Arizona provision, which explicitly refers to aircraft operations on the ground, cross-references federal statutes and regulations. Federal regulations contain a similar prohibition as Arizona. *See* 14 C.F.R. § 91.13(b) ("No person may operate an aircraft . . . *on any part of the surface of an airport used by aircraft for air commerce (including areas used by those aircraft for receiving or discharging persons or cargo)*, in a careless or reckless manner so as to endanger the life or property of another.") (emphasis added). And another federal regulation broadly defines "operate" to mean "use, cause to use or authorize to use aircraft . . . ." *Id.* § 1.1.

Under these provisions, it is difficult to conclude that Flygare, SkyWest's pilot, did not "operate" the aircraft. By Flores's account (there is a genuine dispute of material fact as to what actually happened), Flygare authorized or caused Flores to "use" the aircraft when Flygare either urged or effectively ordered Flores to open a pressurized aircraft door. And Flores was also "using" the aircraft within the meaning of 14 C.F.R. § 1.1, in the sense that he was preparing it for takeoff and flight.

The available case law suggests that a pilot ordering someone to manipulate

an aircraft door in preparation for flight would fall under § 91.13(b). In *Elassaad v. Independence Air, Inc.*, 613 F.3d 119 (3d Cir. 2010), the Third Circuit held that an aircraft was not "operated" under § 91.13 when a passenger was injured descending the plane's stairs. As relevant here, *Elassaad* found that the flight crew was not "operating" the aircraft because "[b]y the time of the accident, the aircraft had landed, taxied to the gate, and come to a complete stop; the crew had already opened the door and lowered the plane's stairs; and all of the passengers other than Elassaad had deplaned." *Id.* at 130. But the overall analysis in *Elassaad* under 14 C.F.R. § 91.13(b) supports drawing the line at whether movement was imparted to the aircraft—which it was here when Flores manipulated a sensitive part of the plane. That is quite distinct from what happened in *Elassaad*, where the flight crew "impart[ed]" no movement to the plane when it simply "watch[ed] Elassaad exit the plane." *Id.* at 130.

The panel majority errs in maintaining that *Elassaad* supports its narrow understanding of what it means to "operate" an aircraft. The panel focuses extensively on *Elassaad*'s treatment of 14 C.F.R. § 91.13(a). That subsection is titled: "Aircraft operations *for the purpose of air navigation*." *Id.* (emphasis added). Accordingly, in evaluating this subsection, the Third Circuit focused on "operations" associated with air navigation. *Elassaad*, 613 F.3d at 129–30. But § 91.13(b) is the relevant subsection in this case. And it covers "[a]ircraft operations *other than for*

3

*the purpose of air navigation*," including (as here) "on any part of the surface of an airport used by aircraft." 14 C.F.R. § 91.13(b). The panel maintains that "[t]he regulations as written are . . . clear that operating an aircraft pertains to aircraft controls and 'navigation.'" But again, § 91.13(b) governs operations on the ground "*other than for the purpose of air navigation*." Imposing a "navigation" gloss on § 91.13(b) is contrary to its text. In any event, the majority's affirmative reliance on *Elassaad* runs counter to the fact that the Third Circuit in that case specifically noted that it did not reach the issue of whether "operating" an aircraft included "the process of opening an aircraft's doors." *Id.* at 130 n.14.

The Eleventh Circuit's decision in *United States v. St. Amour*, 886 F.3d 1009 (11th Cir. 2018) (per curiam), also supports Flores. There, the court held that the term "operate" "necessarily encompasses more than the piloting of an aircraft in flight." *Id.* at 1014. That court noted that the term "operate" includes "the refueling of an aircraft for the purpose of flight" and "broadly embraces any use of an aircraft for the *purpose* of air navigation, including flight itself and actions that are preparatory or incident to flight." *Id.* at 1010, 1014. The court also explained that the term "operations" goes beyond "a strict temporal relationship between the use of an aircraft and flight." *Id.* at 1015. Opening the cabin door is preparatory to flight and, indeed, a "necessary precondition," *id.*, and is thus most reasonably treated as part of the aircraft's operation.

4

The panel majority contends that *St. Amour* is inapposite because its definition of operate "does not pertain to § 91.13 whatsoever." But that is mistaken. *St. Amour*, like this case, "concerns the meaning of the term 'operates an aircraft'" under federal law. *Id.* at 1013. *St. Amour* specifically relied on the definition of "operate" in 14 C.F.R. § 1.1, *see id.* at 1013–14, and that is the same definition of "operate" that applies to 14 C.F.R. § 91.13(b). Indeed, *St. Amour* held that a defendant had "operated" an aircraft when he refueled it for a flight *the next day*; here, the events occurred in connection with an imminent flight. The Eleventh Circuit's reasoning in *St. Amour* persuasively demonstrates that under federal regulations (which Arizona law cross-references), "operating" an aircraft is a broader concept than the majority here makes it out to be.

It may be, of course, that Flores was contributorily negligent, which would affect whether or how much he could recover. SkyWest may have other defenses as well. But the question before us is only whether Flores has identified a cognizable legal duty under Arizona law. For the reasons expressed, I believe he has.