IN THE

# ARIZONA COURT OF APPEALS
### DIVISION TWO

---

JEANETTE M. SANDERS,
*Plaintiff/Appellant,*

*v.*

FRANCIS ALGER,
*Defendant/Appellee.*

No. 2 CA-CV 2015-0158
Filed June 16, 2016

---

Appeal from the Superior Court in Pima County
No. C20131310
The Honorable D. Douglas Metcalf, Judge

**REVERSED AND REMANDED**

---

COUNSEL

Tretschok, McNamara & Miller, P.C., Tucson
By J. Patrick Butler
*Counsel for Plaintiff/Appellant*

Mark Brnovich, Arizona Attorney General
By Robert R. McCright and Cassandra B. Meynard, Assistant
Attorneys General, Tucson
*Counsel for Defendant/Appellee*

## OPINION

Chief Judge Eckerstrom authored the opinion of the Court, in which Presiding Judge Vásquez and Judge Miller concurred.

E C K E R S T R O M, Chief Judge:

¶1  Plaintiff/appellant Jeanette Sanders appeals from the trial court's grant of summary judgment in favor of defendant/appellee Francis Alger. For the following reasons, we reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion.

### Factual and Procedural Background

¶2  "In reviewing a trial court's grant of summary judgment, we view the facts and reasonable inferences therefrom in the light most favorable to the losing party." *Wyckoff v. Mogollon Health All.*, 232 Ariz. 588, ¶ 2, 307 P.3d 1015, 1016 (App. 2013). In 2004, Sanders began to provide in-home care services to Alger. Sanders contracted with the Arizona Department of Economic Security (DES) to provide these services to Alger as an independent provider and continued to do so until 2011. Sanders was not an employee of either Alger or DES.

¶3  In June 2011, Sanders, who was sixty years old, was assisting seventy year-old Alger from his wheelchair to a vehicle when Alger began to fall. Sanders attempted to use "cues and prompts" to assist Alger in regaining his balance, but he did not respond. Alger landed on Sanders as she intervened to prevent the fall and she was seriously injured.[1] Sanders then filed the instant case against Alger alleging negligence.

---

[1]Under the contract between Sanders and DES, the State of Arizona Department of Administration "provide[d] benefits to [Sanders] under the Provider Indemnity Program [PIP] per A.R.S. [§] 41-621." On appeal, Sanders asserts she filed a claim under the

¶4        Alger moved for summary judgment, claiming that because Sanders had a contractual duty to protect Alger from falling, Alger did not owe Sanders a duty of care.  The trial court agreed, citing *Espinoza v. Schulenburg*, 212 Ariz. 215, 129 P.3d 937 (2006).  This appeal followed.

## Summary Judgment

¶5        Our review of a trial court's grant of summary judgment is de novo.  *Link v. Pima County*, 193 Ariz. 336, ¶ 12, 972 P.2d 669, 673 (App. 1998).  Here, the trial court concluded that the "firefighter doctrine" barred Sanders from recovering.  This rule, as articulated by the Arizona Supreme Court, provides that "[a] rescuer who could otherwise recover cannot do so if she is performing her duties as a professional firefighter."  *Espinoza*, 212 Ariz. 215, ¶ 11, 129 P.3d at 939.  Because our supreme court has not yet expanded the firefighter's rule to professions other than traditional first responders, we decline to do so.  We further conclude Alger owed Sanders a duty of care and remand to the trial court for further proceedings.

## Firefighter's Rule

¶6        In *Espinoza*, the court observed that "the tort system is not the appropriate vehicle for compensating public safety employees for injuries sustained as a result of negligence that creates the very need for their employment."  *Id.*  Here, the trial court concluded that although Sanders was not a firefighter, the same logic would apply to her situation, noting that "[b]eing injured by a vulnerable adult while being paid to care for him is comparable to a firefighter being injured while putting out a fire.  In both instances, the person is a professional who is paid to work with the hazard that caused the person's injury."

¶7        In so concluding, the trial court identified an important thread of our supreme court's reasoning.  *See id.* (observing that person whose employment depends on existence of particular risk

_____

PIP, but the claim was never acknowledged.  This matter is not within our record and we do not address the merits of this issue.

should not be permitted to recover in tort when that risk materializes). Other jurisdictions have used this rationale to expand the firefighter's rule to professionals other than police and firefighters. *See, e.g.*, *Grammar v. Dollar*, 911 So. 2d 619, ¶¶ 1, 8 (Miss. Ct. App. 2005) (barring recovery for housekeeper who slipped on wet floor in bathroom).

¶8 However, other public policy concerns underlying the firefighter's rule do not apply as readily to caregivers. A fire poses a broader public danger, which may be hazardous not only to the person who started the fire, but also to those persons and structures in proximity, and members of the public should not be dissuaded from calling firefighters by fear of liability. *See* David L. Strauss, *Where There's Smoke, There's the Firefighter's Rule: Containing the Conflagration After One Hundred Years*, 1992 Wis. L. Rev. 2031, 2038 (1992). This rationale applies with equal force to police officers, but has no application here, where any negligence by Alger posed only a private risk.

¶9 The supreme court in *Espinoza* also quoted this court's observation that "'[p]robably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause . . . fires.'" 212 Ariz. 215, ¶ 11, 129 P.3d at 939, *quoting Grable v. Varela*, 115 Ariz. 222, 223, 564 P.2d 911, 912 (App. 1977). Falls that occur because of disease or physical limitations, unlike fires or automobile crashes, frequently occur without negligence on anyone's part, and our tort system is well accustomed to determining whether a particular fall occurred due to negligence. Because Alger's health condition created a risk that Alger would fall even in the absence of negligence, Sanders's job description did not depend in any substantial part on encountering "negligence that creates the very need for [her] employment." *Id.*

¶10 Finally, the court also noted that "[i]n return for removing the firefighters' right to sue, the public trains, equips, and compensates" firefighters and provides for their care in the case of injury. *Id.* At least one other jurisdiction has declined to expand this rule to professionals other than police and firefighters, noting that police and firefighters enjoy levels of compensation, training, and

4

statutory protection that are not given to other classes of workers. *DeLaire v. Kaskel*, 842 A.2d 1052, 1055-56 (R.I. 2004).

¶11 Our record demonstrates that Sanders received some measure of training as a caregiver. She also possessed a contractual entitlement to seek compensation for her injuries from a state indemnity program known as the Provider Indemnity Program, or PIP. But the record before us is otherwise sparse in documenting how Sanders's compensation and training as a caregiver compares to that of firefighters and police officers. Moreover, the record is entirely silent on how other persons occupying Sanders's field of employment are compensated and trained, an important consideration in evaluating whether public policy justifies a global expansion of the firefighter's rule to caregivers. And neither party has presented this court with any statutes suggesting that home caregivers such as Sanders receive any special legal protection that would justify extinguishing their right to sue for damages arising from the predictable risks of their employment.

¶12 The only established similarity between Sanders's cause of action and those causes of action extinguished by the firefighter's rule, therefore, is that Sanders was employed to respond to the very type of event that caused her injury. This factor sounds in tort law as assumption of risk. As our supreme court made clear in *Espinoza*, that factor standing alone "does not support the complete bar that the firefighter's rule represents." 212 Ariz. 215, ¶ 13, 129 P.3d at 940. Accordingly, we do not find the similarities between caregivers and firefighters sufficient to justify expanding the firefighter's rule. For the above reasons, and because our supreme court has yet to address whether this rule should be expanded beyond its current application, we decline to apply the rule to this case. *Id.* n.3; *cf. Booth v. State*, 207 Ariz. 61, ¶¶ 22-23, 83 P.3d 61, 68-69 (App. 2004) (declining to expand common law immunity).

## Duty

¶13 "[W]hether a duty exists . . . is a matter of law for the court to decide." *Gipson v. Kasey*, 214 Ariz. 141, ¶ 9, 150 P.3d 228, 230 (2007). And, "[t]he issue of duty is not a factual matter; it is a legal matter to be determined *before* the case-specific facts are considered."

*Id.* ¶ 21. As a general rule, "every person is under a duty to avoid creating situations which pose an unreasonable risk of harm to others." *Ontiveros v. Borak*, 136 Ariz. 500, 509, 667 P.2d 200, 209 (1983), *quoting Nazareno v. Urie*, 638 P.2d 671, 674 (Alaska 1981); *accord Nunez v. Prof'l Transit Mgmt. of Tucson, Inc.*, 229 Ariz. 117, ¶ 17, 271 P.3d 1104, 1108 (2012). *But see Gipson*, 214 Ariz. 141, n.4, 150 P.3d at 233 n.4 (noting possible "tension" in this area).

¶14 Although a person has a duty to use reasonable care to avoid injury to others, a person generally has no duty to come to the aid of a person in peril. *La Raia v. Superior Court*, 150 Ariz. 118, 121, 722 P.2d 286, 289 (1986); *Miller v. Arnal Corp.*, 129 Ariz. 484, 487, 632 P.2d 987, 990 (1981). But exceptions to this rule may be created through special relationships, conduct, or, as in the instant case, by contract. *See Stanley v. McCarver*, 208 Ariz. 219, ¶ 7, 92 P.3d 849, 851 (2004); Restatement (Second) of Torts § 323 (1965).

¶15 Here, Sanders, by contract, undertook to care for Alger's physical well-being. Specifically, in her contract with DES to provide services, she agreed to "maintain [Alger's] health and safety," and to assist him with "[a]mbulation" and "[t]ransfer to and from wheelchair." Because Sanders contractually assumed responsibility to protect Alger from falling, Alger urges us to conclude the obverse: Alger owed Sanders no duty of care in preventing himself from falling. In essence, Alger argues that the contractual provision, premised on the assumption that Alger posed a risk of falling in the absence of assistance, relieved Alger of any duty to prevent injury to Sanders during his transfer from his wheelchair.

¶16 However, our supreme court has explained that a contract that purports to relieve a defendant of any duty of care is the legal equivalent to expressly assuming the risk. *1800 Ocotillo, LLC v. WLB Group, Inc.*, 219 Ariz. 200, ¶ 25, 196 P.3d 222, 227 (2008); *see also Phelps v. Firebird Raceway, Inc.*, 210 Ariz. 403, ¶¶ 2, 8, 111 P.3d 1003, 1004, 1005 (2005). The court observed that "'[t]he very basis of the doctrine was that the plaintiff had expressly or impliedly consented to the defendant's negligent conduct, the legal result [being] that the defendant is simply relieved of the duty which would otherwise exist.'" *1800 Ocotillo*, 219 Ariz. 200, ¶ 25, 196 P.3d

at 227, *quoting Schwab v. Matley*, 164 Ariz. 421, 424, 793 P.2d 1088, 1091 (1990) (second alteration in *Schwab*). And, because the Arizona Constitution provides that assumption of risk is always a factual question for a jury, Ariz. Const. art. XVIII, § 5, our supreme court has held such contractual provisions cannot take the question of whether a person assumed a risk away from a jury. *See Phelps*, 210 Ariz. 403, ¶¶ 31, 39, 111 P.3d at 1010, 1012-13. In essence, our supreme court has clarified that contractual provisions that arguably shift risks have no effect on parties' respective duties to each other. Although the contract here imposed a higher duty of care on Sanders, it did not thereby relieve Alger of his own duty. Even had the contract contained an express provision stating Alger did not owe Sanders any duty, our supreme court has instead characterized such provisions as shifts in allocation of risk. *Id.* If the specific provisions of a contract between Sanders and Alger could not take away Alger's duty to Sanders, a more general contractual relationship cannot do so either.

¶17　　　　The contract under which Sanders provided care to Alger imposed upon Sanders an additional duty of care, but we do not treat duty as a seesaw—elevating one person's duty does not necessarily reduce another's. A caregiver might undertake an elevated duty to respond to a patient's falls precisely because the patient can be trusted to behave reasonably to mitigate their frequency.

¶18　　　　Furthermore, were we to conclude that no duty of care was owed here, we would preclude any negligence claim by the caregiver of a patient at risk for falling, even in cases of gross negligence. *See Gipson*, 214 Ariz. 141, ¶ 11, 150 P.3d at 230-31 (absence of duty relieves defendants of liability "no matter how unreasonable their conduct"). Under such a holding, patients who required a cane or a walker, but declined to use it, who declined to take prescribed medication that would assist in maintaining balance, or who deliberately ignored directives from their caregiver would all be protected from suit, even if a jury believed that behavior was unreasonable. We are reluctant to so globally conclude that a patient owes no duty whatsoever to his caregiver. *See Cowen v. Thornton*, 621 So. 2d 684, 687-88 (Fla. Dist. Ct. App. 1993).

**¶19** Although we recognize that "[t]he purpose of the summary judgment rule is to enable trial courts to rid the system of claims that are meritless and do not deserve to be tried," *Orme Sch. v. Reeves*, 166 Ariz. 301, 311, 802 P.2d 1000, 1010 (1990), "[w]e do not anticipate that this opinion will subject a whole new cadre of cases to jury consideration." *Phelps*, 210 Ariz. 403, ¶ 41, 111 P.3d at 1013. As to cases raising defenses of assumption of risk, our state constitution decrees that the sound judgment of a jury must be the deterrent to non-meritorious lawsuits. *See id.* ¶ 42 (noting juries will reach appropriate results). For these reasons, we conclude that Alger owed Sanders the basic duty that all persons owe each other: the duty to use reasonable care to avoid causing injury to others.[2] *Ontiveros*, 136 Ariz. at 509, 667 P.2d at 209.

## Summary Judgment

**¶20** Alger also sought summary judgment on the basis that "no reasonable jury could find that [Alger] breached a duty." Summary judgment is appropriate if "no reasonable juror could conclude that the standard of care was breached." *Gipson*, 214 Ariz. 141, n.1, 150 P.3d at 230 n.1.

**¶21** In Sanders's deposition, she testified that "Alger started to fall," and then she "was trying to give him cues and prompts, and he was not responding to them. He just proceeded to fall." In Alger's own description of the incident, he "started to fall. [Sanders] tried to stop [him] and [he] grab[b]ed her. She said you are hurting me let me go." Both parties' statements support a conclusion that Alger had already begun to fall at the time Sanders intervened. A person is negligent if he "fail[s] to act as a reasonable and prudent person would act in like circumstances." *Morris v. Ortiz*, 103 Ariz. 119, 120, 437 P.2d 652, 654 (1968). Sanders essentially claims Alger was negligent because he did not take reasonable steps to stop

---

[2] We note that the duty owed by Alger is the duty of a reasonable person under the circumstances, and those circumstances include his physical disabilities. *See Morris v. Ortiz*, 103 Ariz. 119, 121, 437 P.2d 652, 654 (1968); Restatement (Second) of Torts § 283(C) (1965).

himself from falling and that Alger fell in part because he was distracted and not focused on his balance. Alger counters that the risk he posed for falling arose from a physical condition over which he had no control: a fact that was known, undisputed, and one of the express bases of Sanders's employment. Alger is entitled to summary judgment if no reasonable juror could find negligence existed under such circumstances. *See Coburn v. City of Tucson*, 143 Ariz. 50, 53-54, 691 P.2d 1078, 1081-82 (1984) (concluding city's failure to remove bush that partially obstructed view of road did not violate duty of care). Because the trial court based its ruling on the firefighter's rule, it did not reach Alger's claim that he was entitled to summary judgment on this ground. We therefore remand this case to the trial court for further proceedings consistent with this opinion.

## Damages

**¶22**    Sanders next contends the trial court erred because it found her injuries covered under the PIP but did not require the state to provide her any damages under that program. To the extent Sanders claims the State of Arizona, through either DES or PIP, has failed to fulfill its contractual responsibilities to "provide benefits," that issue was not before the court, as the state was not named in this lawsuit. *Cf. Dietz v. Gen. Elec. Co.*, 169 Ariz. 505, 507, 821 P.2d 166, 168 (1991) (jury finding of nonparty at fault "does not subject the nonparty to liability").

## Disposition

**¶23**    For the foregoing reasons, we reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion.