IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**JEANETTE M. SANDERS,**
*Plaintiff/Appellant,*

*v.*

**FRANCIS ALGER,**
*Defendant/Appellee.*

No. CV-16-0181-PR
Filed June 1, 2017

Appeal from the Superior Court in Pima County
The Honorable D. Douglas Metcalf, Judge
No. C20131310
**REVERSED AND REMANDED**

Opinion of the Court of Appeals, Division Two
240 Ariz. 90, 375 P.3d 1199 (App. 2016)
**VACATED IN PART**

COUNSEL:

J. Patrick Butler (argued), Tretschok, McNamara & Miller, P.C., Tucson,
Attorneys for Jeanette M. Sanders

Mark Brnovich, Arizona Attorney General, Dominic Draye, Solicitor
General, Daniel P. Schaack (argued), Assistant Attorney General, Phoenix,
Robert R. McCright, Assistant Attorney General, Attorneys for Francis
Alger

CHIEF JUSTICE BALES authored the opinion of the Court, in which VICE
CHIEF JUSTICE PELANDER, JUSTICES BRUTINEL, TIMMER, BOLICK,
and GOULD, and JUDGE VEDERMAN joined.*

---

* Justice John R. Lopez, IV has recused himself from this case. Pursuant to
article 6, section 3 of the Arizona Constitution, the Honorable Samuel E.
Vederman, Presiding Judge of the La Paz County Superior Court, was
designated to sit in this matter.

CHIEF JUSTICE BALES, opinion of the Court:

**¶1**        We hold that a patient owes a duty of reasonable care to a caregiver allegedly injured by the patient's actions, thereby making the patient potentially liable for negligence. We further hold that the negligence claim, which involves an in-home caregiver hired by the Arizona Department of Economic Security ("DES"), is not barred by the firefighter's rule, a common law doctrine barring recovery by a rescuer for injuries incurred while performing duties as a professional firefighter.

## I.

**¶2**        We review a trial court's grant of summary judgment de novo. *Andrews v. Blake*, 205 Ariz. 236, 240 ¶ 12 (2003). Because the trial court granted summary judgment in favor of Defendant Francis Alger, we view the evidence and reasonable inferences in the light most favorable to Plaintiff Jeanette M. Sanders as the non-moving party. *See id.*

**¶3**        In 2004, Sanders contracted with DES to provide in-home care to Alger, who is developmentally disabled and, as a "vulnerable adult," is eligible for services from the DES Division of Developmental Disabilities. *See* A.R.S. § 36-559(A). Alger suffers from cerebral palsy and other conditions that limit his mobility and place him at risk of falling. Sanders worked for DES as an independent contractor rather than an employee. In 2011, Sanders, then sixty years old, was assisting seventy-four-year-old Alger in moving from his wheelchair to a car. Alger attempted to stand up and, distracted, did not respond to Sanders' warnings and began to fall. When Sanders tried to prevent the fall, Alger grabbed her, and she said "let go, you're hurting me." Alger nonetheless fell on Sanders, seriously injuring her. Sanders subsequently sued Alger for negligence. Among other things, she alleged that he had negligently placed himself in jeopardy of falling, thereby requiring her to rescue him.

**¶4**        Alger moved for summary judgment, arguing that he did not owe a duty of care to Sanders, that the firefighter's rule barred her claim, and that no reasonable jury could find that he had acted negligently. The trial court granted summary judgment based on the firefighter's rule and did not address the other arguments.

¶5 The court of appeals reversed, holding that the firefighter's rule does not apply. *Sanders v. Alger*, 240 Ariz. 90, 93 ¶ 12 (App. 2016). The court also held that "Alger owed Sanders the basic duty that all persons owe each other: the duty to use reasonable care to avoid causing injury to others." *Id.* at 94 ¶ 19 (footnote omitted) (citing *Ontiveros v. Borak*, 136 Ariz. 500, 509 (1983)). The court concluded that Alger was not relieved of his duty by the fact that Sanders had contractually undertaken to care for him, including by helping to prevent the risks of his falling. *Id.* at 93–94 ¶¶ 15–16.

¶6 We granted review to consider whether a patient owes a caregiver a duty of reasonable care and, if so, whether the firefighter's rule bars a caregiver's negligence claim, both recurring issues of statewide importance. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.

### A.

¶7 Under Arizona law, a plaintiff must prove four elements to sustain a claim for negligence: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143 ¶ 9 (2007). "Whether the defendant owes the plaintiff a duty of care is a threshold issue; absent some duty, an action for negligence cannot be maintained." *Id.* ¶ 11 (citation omitted).

¶8 We first address whether Alger, the patient, owed any duty to Sanders, who provided caregiver services to him pursuant to her contract with DES. The court of appeals held that such a duty exists because all people have a duty to use reasonable care to avoid causing injury to others. *Sanders*, 240 Ariz. at 94 ¶ 19; *cf.* Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 7(a) (Am. Law Inst. 2010) (providing that "[a]n actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm"). Although we agree with the court of appeals that Alger owed a duty of reasonable care to Sanders, we decline to adopt that court's rationale, as we need not here decide whether people generally owe a duty of reasonable care to others. *Cf. Gipson*, 214 Ariz. at 146 ¶ 24 & n.4 (noting tension in Court's statements regarding scope of duty

and declining, as unnecessary, to base decision on broad statements of duty generally owed by all persons).

**¶9** Under Arizona common law, duties of care may arise from, among other things, a direct relationship between the parties. *Id.* at 144–45 ¶ 18; *see also Stanley v. McCarver*, 208 Ariz. 219, 221 ¶ 7, 223 ¶ 13 (2004) (recognizing duty by examining physician even absent formal physician-patient relationship); *Ontiveros*, 136 Ariz. at 508 ("The relation between individuals which imposes a legal obligation is usually a direct relationship between the plaintiff and defendant."); *cf. Alhambra Sch. Dist. v. Superior Court*, 165 Ariz. 38, 41 (1990) ("Duty refers to the relationship between individuals; it imposes a legal obligation on one party for the benefit of the other party.") (citation omitted).

**¶10** No one questions that caregivers who contractually agree to provide services (such as helping a person with mobility issues) have a direct relationship with their patients and owe them a duty of reasonable care in connection with such services. Nor would anyone dispute that, given the relationship, the caregiver owes a duty of reasonable care with respect to actions beyond the contractually assumed responsibilities. For example, a caregiver hired to help with mobility issues would undoubtedly owe a duty of care that would be implicated if the caregiver negligently spilled scalding water on the patient.

**¶11** The question here is whether patients owe any duty to their caregivers. Recognizing such a duty comports with our recognition of duties in other contexts. If a patient sues a caregiver for alleged negligence, the defendant caregiver generally will be able to argue that the patient's own failure to act with reasonable care constitutes contributory negligence. *See, e.g.*, *George Washington Univ. v. Waas*, 648 A.2d 178, 184–85 (D.C. 1994) (citing case law and jury instructions from numerous states and other legal authority recognizing a patient's contributory negligence and duty to his or her physician in medical contexts); Richard A. Epstein, Torts § 8.2.1, at 189 (1999) (noting that duty is an element of contributory negligence).

**¶12** Recognizing a duty of care on the part of patients is also consistent with the rescue doctrine recognized in *Espinoza v. Schulenburg*, 212 Ariz. 215 (2006). Under the rescue doctrine, an actor who negligently imperils himself or herself may be liable to a person who is physically harmed in attempting to aid or protect the actor. *See Espinoza*, 212 Ariz. at

4

217 ¶¶ 7–9 (adopting Restatement (Third) of Torts: Liab. For Physical & Emotional Harms § 32); *see also Cowen v. Thornton*, 621 So. 2d 684, 687–88 & n.1 (Fla. Dist. Ct. App. 1993) (finding patient owed duty of care to caregiver despite patient's assertion that the firefighter's rule barred the caregiver rescuer's claim). "The law should encourage people to respond to those in distress. The rescue doctrine does so by allowing the possibility of compensation to those who injure themselves while taking risks to help others." *Espinoza*, 212 Ariz. at 217 ¶ 9. Thus, the rescue doctrine presumes a "duty" on the part of the actor whose conduct creates the need for rescue - if the actor fails to exercise reasonable care and imperils the actor or another, the actor's breach of that duty may result in liability to a person harmed while trying to aid or protect the actor. *See Sears v. Morrison*, 90 Cal. Rptr. 2d 528, 532–34 (Ct. App. 1999) (compiling cases from various jurisdictions and other authorities recognizing that rescuer may seek recovery from person negligently placing himself or herself in danger).

¶13     Recognizing a duty by patients to their caregivers is not, of course, the same as saying that patients will be liable for injuries incurred by a caregiver in doing his or her job or that the patient's standard of care is the same as that of a caregiver. *See* Restatement (Second) of Torts § 299(A) (Am. Law Inst. 1965) (noting "one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities"). That a duty exists does not mean that it has been breached in any particular case or that a negligent act has proximately caused an injury. Similarly, recognizing the existence of a duty of care does not preclude the jury's application of doctrines such as comparative fault, assumption of risk, or superseding cause to limit recovery of damages. *See Gipson*, 214 Ariz. at 147 ¶ 30 (noting that "[w]hether the plaintiff's conduct constituted an intervening (or even a superseding) cause of the harm suffered is a question of fact and does not determine whether a duty exists"); *see also* A.R.S. § 12-2505(A) (providing that defenses of contributory negligence or assumption of risk do not bar action but reduce damages "in proportion to the relative degree of the claimant's fault which is a proximate cause of the injury or death").

¶14     Alger argues that public policy factors weigh against imposing a duty on him as a disabled adult because doing so would discourage individuals and their families from seeking state-provided caregiving services. Although public policy may support the adoption of a

no-duty rule in some circumstances, *see Guerra v. State*, 237 Ariz. 183, 187 ¶ 20 (2015), we decline to adopt a rule that patients categorically owe no duty of care to those who provide caregiver services. *Cf. Gipson*, 214 Ariz. at 143–44 ¶ 11 (noting that "a conclusion that no duty exists is equivalent to a rule that, for certain categories of cases, defendants may not be held accountable for damages they carelessly cause, no matter how unreasonable their conduct").

¶15 Contrary to Alger's arguments, a blanket exemption of liability for injuries patients cause their caregivers is not "necessary as a matter of public welfare." *Ontiveros*, 136 Ariz. at 513. Nor can we conclude that finding a duty here would "chill socially desirable conduct or otherwise have adverse effects." *Gipson*, 214 Ariz. at 146 ¶ 29. Indeed, barring recovery by caregivers might well discourage people from providing such services.

¶16 Apart from whether patients generally owe any duty to their caregivers, Alger also argues that we should find that no duty exists here because Sanders agreed in her contract with DES to provide services to protect Alger, and his individual support plan - of which she was aware - recognized that his condition placed him at risk of falling. Thus, Alger argues, he should not have owed any duty to Sanders to avoid the risk that she contractually undertook to prevent. This argument founders because, at bottom, it asserts that Sanders assumed the risk that caused her injury. Under Arizona law, whether a plaintiff has contractually assumed a risk is an issue of fact for the jury, not an issue of "duty" to be decided as a matter of law. *See Phelps v. Firebird Raceway, Inc.*, 210 Ariz. 403, 404 ¶ 2, 405 ¶ 11 (2005); *see also* Ariz. Const. art. 18, § 5; A.R.S. § 12-2505(A).

¶17 In summary, we hold that, based on the direct relationship between caregiver and patient, the latter owes a duty of reasonable care with respect to conduct creating a risk of physical harm to the caregiver.

**B.**

¶18 Alger argues that even if he owed a duty of care to Sanders, her negligence claim should be barred by the firefighter's rule. Like the court of appeals, we conclude that the rule does not apply here.

**¶19**        The firefighter's rule is an exception to the rescue doctrine, i.e., "[a] rescuer who could otherwise recover cannot do so if she is performing her duties as a professional firefighter." *Espinoza*, 212 Ariz. at 217 ¶ 11.  Our courts recognize the firefighter's rule as a matter of public policy, noting that "the tort system is not the appropriate vehicle for compensating public safety employees for injuries sustained as a result of negligence that creates the very need for their employment."  *Id.*  Rather, firefighters are compensated as public employees.  *Id.*

**¶20**        In urging us to apply the firefighter's rule, Alger notes that Sanders, although an independent contractor and not a public employee, was paid with public funds to care for him; Sanders may seek compensation for her injuries through the State's Provider Indemnity Program ("PIP"); and Alger's disabilities created the need for Sanders' employment.

**¶21**        We construe the firefighter's rule narrowly.  *Id.* at 218 ¶ 17.  "The rule applies when a firefighter's presence at a rescue scene results from the firefighter's on-duty obligations as a firefighter."  *Id.* (footnote omitted).  Thus, the rule does not prohibit tort recovery for off-duty firefighters.  *Id.* at 218–19 ¶ 17.  Limiting the reach of the firefighter's rule "comport[s] with Arizona's policy of protecting its citizens' right to pursue tort claims."  *Id.* at 218 ¶ 16; *see also* Ariz. Const. art. 18, § 6 ("The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation . . . ."); *id.* art. 2, § 31 (prohibiting laws limiting damages for death and injury).

**¶22**        Moreover, the firefighter's rule is an exception to the rescue doctrine rather than a more general rule barring tort recovery.  Our recognition of a patient's duty to his or her caregiver is based on the direct, categorical relationship and is not limited to situations in which the caregiver responds to an emergency created by the patient's negligence.  Arguably, the rescue doctrine would not apply (nor would the firefighter's rule as an exception to that doctrine) in this case, inasmuch as Sanders was performing her usual duties in assisting Alger rather than responding to an emergency.  *Cf. Orth v. Cole*, 191 Ariz. 291, 292 ¶ 6 (App. 1998) (declining to apply firefighter's rule to routine inspections).

**¶23**        In any event, we decline to extend the firefighter's rule to caregivers to prohibit their recovery when responding to an emergency.  Unlike firefighters, caregivers generally are not "public safety employees"

who are trained, equipped, and compensated to professionally rescue others. *See Espinoza*, 212 Ariz. at 217 ¶ 11. Even though the caregiver's salary here was paid with public funds, like a firefighter's, *see id.* (quoting *Grable v. Varela*, 115 Ariz. 222, 223 (App. 1977)), such compensation does not convert a caregiver into a professional rescuer. Furthermore, the existence of the PIP does not alter our conclusion. *Cf. id.* at 219 ¶ 20 ("[T]he availability of workers' compensation to a particular worker does not control our determination of the applicability of the firefighter's rule."). Finally, we agree with the court of appeals that Sanders' job did not depend on encountering "negligence that creates the very need for [her] employment" in the same way a firefighter encounters mostly negligently caused fires. *See id.* at 217 ¶ 11.

## C.

**¶24** Alger argued in the trial court that no reasonable juror could find he acted negligently in the circumstances of this case. The trial court did not decide this issue, and the court of appeals declined to do so in the first instance. *See Sanders*, 240 Ariz. at 95 ¶ 21. We did not grant review on this issue, but we note it to underscore that our ruling does not establish liability on Alger's part. As the court of appeals recognized, *id.* at 94 ¶ 19 n.2, the duty owed by Alger is that of a reasonable person under the circumstances, and those circumstances include his physical disabilities and limitations. *See Alhambra Sch. Dist.*, 165 Ariz. at 42 ("The particular facts of the case . . . are the circumstances under which the reasonableness of the [defendant's] conduct is to be judged.") (footnote omitted); *Morris v. Ortiz*, 103 Ariz. 119, 121 (1968); Restatement (Second) of Torts § 283(C) (Am. Law Inst. 1965). He will be entitled to summary judgment if, as he contends, "no reasonable juror could conclude that the standard of care was breached . . . ." *Gipson*, 214 Ariz. at 143 ¶ 9 n.1.

## II.

**¶25** We vacate ¶¶ 6–19 of the court of appeals' opinion, reverse the trial court's summary judgment in Alger's favor, and remand the case to the trial court for further proceedings consistent with this opinion.