NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

---

CONSUELO ROMERO, et al., *Plaintiffs/Appellants*,

*v.*

BEVERLY LANGSTON, *Defendant/Appellee*.

No. 1 CA-CV 17-0178
FILED 3-22-2018

---

Appeal from the Superior Court in Maricopa County
No. CV 2013-010850
The Honorable Jo Lynn Gentry, Judge

**AFFIRMED**

---

COUNSEL

Bedford Douglass, Jr., Attorney at Law, Mesa
By Bedford Douglass, Jr.
*Counsel for Plaintiffs/Appellants*

Law Office of Robert B. Stanewich, Phoenix
By Angelo J. Patane
*Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Judge Maurice Portley[1] delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Maria Elena Cruz joined.

---

**P O R T L E Y**, Judge:

¶1 Consuelo Romero and her husband, Hector Romero, appeal from the denial of their motion for new trial after a defense jury verdict. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 Beverly Langston carelessly drove her car into the back of the car Mrs. Romero was driving in February 2012. Although the investigating officer concluded that Mrs. Romero was injured, she declined the offer for an ambulance. Instead, when Mr. Romero arrived, he drove her to her primary doctor. Dr. Rosen examined her, noted she was suffering from a headache, neck pain, and left shoulder pain, which he attributed to whiplash, and diagnosed her with a grade II concussion.

¶3 The Romeros subsequently sued Langston for negligence. Mrs. Romero sought damages for her injuries and her alleged pain and suffering resulting from the accident, while Mr. Romero sought damages for loss of consortium. They did not request, however, "compensation for property damages or medical expenses."

¶4 At trial, Langston admitted she drove her car into Mrs. Romero's car. She disputed that the accident caused Mrs. Romero's pain and suffering, attributing her pain instead to prior injuries and pre-existing conditions. After the presentation of evidence, instructions and final argument, the jury returned a defense verdict in favor of Langston and against the Romeros. They then filed an unsuccessful motion for new trial. They appeal, and we have jurisdiction pursuant to Arizona Revised Statute (A.R.S.) section 12-2101(A).

---

[1] The Honorable Maurice Portley, Retired Judge of the Arizona Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

## DISCUSSION

**¶5**　　　　The Romeros now challenge the denial of their motion for new trial arguing the evidence cannot support the verdict. They also argue that the trial court erred by limiting their voir dire and by incorrectly sustaining an objection during Langston's cross-examination.

### A.　　Sufficiency of the Evidence

**¶6**　　　　We review the first argument—the denial of the motion for new trial—for an abuse of discretion. *State v. Fischer*, 242 Ariz. 44, 48, ¶ 10 (2017). A trial court may grant a new trial when "the verdict is the result of passion or prejudice" or "the verdict . . . , or judgment is not supported by the evidence." Ariz. R. Civ. P. 59(1)(G)-(H). In fact, the trial court, as the "ninth juror" has the "duty to grant a new trial when the verdict is against the *clear weight* of the evidence." *Fischer*, 242 Ariz. at 49, ¶ 14 (emphasis added).

**¶7**　　　　We will generally affirm a ruling on a new trial motion challenging the sufficiency of the evidence as long as there is substantial evidence supporting the court's determination. *Fischer*, 242 Ariz. at 51, ¶ 26. Evidence is substantial if it allows "a reasonable person to reach the [jury's] result." *Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 52, ¶ 11 (App. 2009)(citing *Davis v. Zlatos*, 211 Ariz. 519, 524, ¶ 18 (App. 2005)). "We will not reweigh the evidence or substitute our evaluation of the facts." *Castro*, 222 Ariz. at 52, ¶ 11. We will only set aside a jury verdict "if there is no evidence in the record which would justify such conclusion by the triers of fact." *Spain v. Griffith*, 42 Ariz. 304, 305 (1933); *see Castro*, 222 Ariz. at 52, ¶ 11. We will not reverse or vacate the ruling merely because "there is a dispute in the evidence from which reasonable [people] could arrive at different conclusions as to the ultimate facts." *Spain*, 42 Ariz. at 305. In other words, we will not set aside a jury verdict simply "because we do not agree with the conclusion reached," *id.*, because it is the duty of the jury to determine the credibility of witnesses and the weight to be given to conflicting testimony. *Logerquist v. McVey*, 196 Ariz. 470, 487, ¶ 51 (2000).

**¶8**　　　　In a negligence case, a plaintiff must prove four elements: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Sanders v. Alger*, 242 Ariz. 246, 248, ¶ 7 (2017), *US Airways, Inc. v. Qwest Corp.*, 238 Ariz. 413, 420, ¶ 20. (App. 2015). This case turned on the third element: whether there was "a causal connection between [Langston's]

conduct and [Mrs. Romero's] resulting injur[ies]." *Sanders,* 242 Ariz. at 246, ¶ 7.

¶9            During trial, Mrs. Romero presented evidence that her injuries were caused by the accident and, as a result, she suffered physical and emotional pain.  Dr. Rosen testified that Mrs. Romero told him she was suffering from neck pain, shoulder pain, and headaches at the time of her visit.  As a result, he attributed her injuries and symptoms to the collision, and prescribed her physical therapy.  He further testified she, despite completing several therapy sessions, continued to experience neck pain and "weakness in [her] left shoulder."

¶10           Mrs. Romero testified that her pain precluded her from doing household chores, going hiking, and being a loving wife.  Her husband and daughter both testified that after the accident Mrs. Romero had so much pain that she could not pick up her one-year old grandson, hug him, or help care for him, which caused her emotional pain.  Based on all the testimony presented, including her inability to go to prayer service, there was evidence to support her claims.

¶11           Mrs. Romero also testified that she had been in two prior car accidents:  the first in 1995, when she "was hit on the driver's side" and suffered right shoulder pain, headaches, and neck pain; and the second in 2000, which caused her pain on her left shoulder, neck, head, and chest.  Moreover, she, and her husband, testified that after the second accident she continued to experience intermittent physical pain.  Her medical records also demonstrated that she visited different medical facilities intermittently for pain treatment between 2000 and 2010.

¶12           Although there was evidence suggesting that the injuries to the left side of Mrs. Romero's neck and shoulder were caused, or exacerbated, by the 2012 accident, reasonable jurors could have instead attributed her injuries to her prior accidents.  In fact, given her medical records, a reasonable juror could have considered all the evidence and concluded that her injuries were the result of the earlier accidents, not the 2012 accident, except that she used the 2012 accident as an opportunity to treat those injuries.  Because the jurors had to determine witness credibility and find the facts based on the evidence, and given that there is evidence that supports the verdict,[2] the court did not abuse its discretion by denying

_____

[2]      In 2014, nearly a year after the lawsuit was filed, Mrs. Romero fell off a chair and injured her right shoulder.  She received treatment at The

4

the motion for new trial.  *See Fischer*, 242 Ariz. at 51 ¶ 26; *Spain*, 42 Ariz. at 305.

### B.    Voir Dire

**¶13**    The Romeros also argue that the court erred by restricting their voir dire on "issues of racial bias, immigration[,] and naturalization." Because Plaintiffs have not shown any prejudice, they are not entitled to a new trial.

**¶14**    A trial court "must thoroughly question the jury panel to ensure that prospective jurors are qualified, fair, and impartial."  Ariz. R. Civ. P. 47(c)(3).  Moreover, "[t]he court must permit each of the parties to ask the panel additional questions, but may impose reasonable limits on [the extent of] the questioning."  *Id.*  On appeal, "[w]e will not overturn a trial court's ruling on the scope of voir dire absent an abuse of discretion," nor will we "reverse a judgment unless the error was prejudicial."  *Zulaga v. Bashas', Inc.*, 242 Ariz. 205, 207, ¶ 4 (App. 2017).

**¶15**    Mrs. Romero is a Mexican-born, naturalized American citizen.  Her lawyer attempted to ask the jury venire questions focused on determining whether the prospective jurors were biased against Hispanic citizens who were born outside of the United States.  Her lawyer argued that the questions were necessary because then-presidential candidate, and future Republican presidential nominee, Donald Trump, had recently made remarks considered to be racist about a large portion of Mexican immigrants.  Because Mr. Trump's nomination ostensibly "reflect[ed] the opinions of the nation," the lawyer argued that he needed to scrutinize the jury to ensure his clients would not suffer from racial prejudices.  The court allowed counsel to ask certain bias-related questions, but restricted him from asking others.  Specifically, the court told counsel that he could not ask the prospective jurors "about all the negativity towards Hispanics or wherever you're going with that."  Additionally, the court did not allow

Orthopedic Clinic Association ("TOCA").  Impressed by the physical therapy results, she testified that she requested TOCA to treat her 2012 *left* shoulder injury, but denied that her fall from the chair had anything to do with her left shoulder discomfort.

counsel to ask questions that were too "specific," such as whether the jurors had Hispanic neighbors or whether they spoke Spanish.[3]

¶16 Assuming, without deciding, that the trial court may have erred by preventing the lawyer for the Romeros from asking certain bias-related questions, we conclude that the Romeros have failed to show any resulting prejudice. During voir dire, the following exchange occurred between counsel and three prospective jurors:

> [Counsel]: Consuelo and Edgar are immigrants to the United States from Mexico. Do you – what do you think about giving the same justice to immigrants from Mexico as you would to a native-born citizen? Is there anyone who would have any reluctance to do that?

> Prospective Juror Number 31: Are they U.S. citizens?

> . . .

> [Counsel]: Would that make a difference in your decision?

> Prospective Juror Number 31: It could.

> [Counsel]: Could you tell us about that?

> Prospective Juror 31: I -- I don't know. I just -- I just thought that they were, you know, I don't know. If they were here illegally it could possibly make a difference to me.

> [Counsel]: And if they are not here illegally, it makes no difference that they came from Mexico?

> Prospective Juror Number 31: I guess it wouldn't matter where they came from. I don't know. I guess, I mean, do they have a driver's

---

[3] The court also noted that "it [did not] matter if [the jurors] employ Hispanics . . . . work with Hispanics . . . if their relationships with Hispanics have been favorable or unfavorable."

license?  Do they -- I don't know.  I -- I guess that's where I was coming from.  Were they driving illegally?

[Counsel]: No, there was no illegal driving in this case, no driving without a driver's license.

Prospective Juror Number 31: That was my thought process.

[Counsel]: And they're not illegal.

. . . .

[Counsel]: Okay.  Otherwise . . . assuming that all the parties in this case had driver's licenses or were legally licensed and – but that the Plaintiffs come from Mexico and immigrated to the United States, would that or should that have any effect on your verdict?

Prospective Juror 31: No.

. . . .

The Court: Number 6 has a question.

[Counsel]: Yes.

Prospective Juror Number 6: Did they -- did they follow the process to immigrate legally or --

Unidentified Prospective Juror: What does it matter?

Prospective Juror Number 6: -- was it done so through other means?

[Counsel]: They have become legally citizens of the United States.

Prospective Juror Number 6: When they -- when they -- I don't know how touchy or how to phrase it, but when they came, they did all their

paperwork and they followed all the substantive stuff to become citizens and whatnot before they were here?

[Counsel]: I don't think I'm allowed to answer that question.

Prospective Juror Number 6: Okay.

[Counsel]: Would that make a difference in your decision?

Prospective Juror Number 6: No, sir.

. . . .

Prospective Juror Number 22: To me it might.

[Counsel]: Okay. And why is that?

Prospective Juror Number 22: Why? Because I don't believe it's right just to, either what they call an anchor baby just to get into the United States, that kind of -- I mean, I don't think that's right at all.

. . . .

[Counsel]: Is your position that, if a plaintiff comes to the United States illegally but later becomes a citizen of the United States, that that's somehow improper and they should not be dealt in court the same as a native-born citizen?

Prospective Juror Number 22: I do still think they should be dealt with normally and properly, but I just feel like that's very wrong to do. Why should you be allowed to be in the country if you're just going to bring -- do a felony itself to get into the country? What else are you willing to do?

[Counsel]: Would that affect -- would that thinking sort of affect your –

8

Prospective Juror Number 22: I mean, depending on the answer, yes.

[Counsel]: There's going to be no answer to that question because the judge does not allow us to go into that area.

Prospective Juror Number 22: Then I'd hope not. Then I'd probably just go off of the evidence.

[Counsel]: All right. But is that an idea in the back of your head which is likely to tip you against the verdict for the plaintiffs because they might have come here illegally at some point in the past?

Prospective Juror Number 22: I don't know.

[Counsel]: It might?

Prospective Juror Number 22: I guess.
(Emphasis added)

¶17      Although Prospective Juror Number 22 admitted she would possibly be unable to be fair and impartial to the Romeros based on biases, that prospective juror was successfully challenged for cause and removed from consideration to sit on the jury. Moreover, Prospective Juror Number 6 was removed by a peremptory challenge by the Romeros lawyer. And, after the trial jurors were selected and did not include Prospective Juror Number 31, that juror was released from jury service. Because none of the problematic prospective jurors were seated for the trial, and the Romeros did not raise to the trial court, or otherwise identify, that the trial jurors were somehow tainted and did not follow the jury instructions, there is no showing of any prejudice. Accordingly, we find no reversible error requiring a new trial.

### C.    Langston Objection

¶18      Finally, the Romeros argue the court abused its discretion by "sustaining [Langston's] objection to [a] question on cross-examination of [Langston]." The parties disagree on whether the question was relevant. "We review the trial court's determination of relevance for an abuse of discretion." *State v. Duncan*, 216 Ariz. 260, 264, ¶ 13 (App. 2007).

9

¶19        During Langston's testimony, the following occurred:

[Counsel]: You've heard me explain to the jury that you're accepting responsibility?

[Langston]: Yes, I am.

[Counsel]: It was an accident, and you understand that under the law, you're held responsible?

[Langston]: Yes, I do.

[Counsel]: And you're okay with that, right?

[Langston]: Yes, sir.

. . . .

[Romeros' counsel on cross]: You ran your vehicle into the rear of Consuelo's vehicle, correct?

[Langston] Yes, sir.

[Romeros'counsel]: And you did so carelessly, correct?

[Langston]: Yes.

. . . .

[Romeros' counsel]: Now, you are sorry for the collision?

[Langston]: Very much so.

[Romeros' counsel]: And you would want Consuelo Romero to be compensated fully and completely for all the harms and losses that you caused her in the collision?

[Langston's Counsel]: Your Honor, I'm going to object to the question. I think that is a question

more directed, and within the province of the
jury, as to whether or not any compensation
should be awarded.

The Court: Sustained.

¶20 The question of whether Langston "want[ed] Consuelo
Romero to be compensated fully and completely for all the harms and
losses" caused by the collision was not relevant to issue of causation or
damages under Arizona Rule of Evidence 401, and were the issues the jury
had to resolve. What Langston may have wanted after admitting to causing
the accident did not make it more or less likely that the accident had a causal
connection to the injuries sustained by Mrs. Romero or the damages she
and her husband were seeking. As a result, we find no abuse of discretion.

**CONCLUSION**

¶21 Based on the foregoing, we affirm the denial of the motion for
new trial.

