NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

BRETT BAKKER, et al., *Plaintiffs/Appellants*,

*v.*

BANNER HEALTH SYSTEM, et al., *Defendants/Appellees*.

No. 1 CA-CV 18-0614
FILED 10-22-2019

Appeal from the Superior Court in Maricopa County
No. CV2016-094316
The Honorable David J. Palmer, Judge

**AFFIRMED**

COUNSEL

Keith M. Knowlton, L.L.C., Tempe
By Keith M. Knowlton
*Counsel for Plaintiffs/Appellants*

Campbell, Yost, Clare & Norell, P.C., Phoenix
By Margaret F. Dean, Rachel Anne DaPena
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Kent E. Cattani and Judge David D. Weinzweig joined.

---

**C R U Z**, Judge:

¶1 Brett Bakker and Rebecca Bakker ("Appellants") appeal a judgment in favor of Banner Health System ("Banner") and Banner social worker Shayla Paap ("Paap") (collectively "Appellees"). Appellants assert in particular that the superior court erred by granting a pre-verdict motion for partial summary judgment on claims of negligence and intrusion upon seclusion on the basis that (1) Paap had reasonable grounds to report child abuse, and (2) Appellants were required to proffer a medical standard of care expert on claims of negligence arising from Paap's conduct. We affirm the superior court's grant of partial summary judgment.

## FACTUAL AND PROCEDURAL HISTORY

¶2 M.B. was born on August 1, 2014. Mr. Bakker is the biological father of M.B., but Mrs. Bakker is not her biological or adoptive mother.

¶3 Doctor Emilia Gomez ("Dr. Gomez") is a pediatrician and owner of Pediatrics of Queen Creek. Dr. Gomez began seeing M.B. for primary care treatment soon after M.B. was born. As part of the admission process of a new client, Dr. Gomez asked Mrs. Bakker about the circumstances surrounding M.B.'s conception. Mrs. Bakker informed Dr. Gomez that she and Mr. Baker used a surrogate to conceive.

¶4 Dr. Gomez saw M.B. when she was about ten months old to address concerns Mrs. Bakker raised about M.B.'s purported seizures. At that time, Mrs. Bakker told Dr. Gomez about treatment recommendations made by Doctor Amy Calhoun ("Dr. Calhoun"), a Minnesota geneticist. Dr. Gomez requested that Mrs. Bakker provide documentation confirming what Dr. Calhoun had recommended.

¶5 After Mrs. Bakker failed to provide the requested documents, Dr. Gomez called Dr. Calhoun. Dr. Calhoun reported that she did not make the recommendations represented by Mrs. Bakker and expressed a concern about the reasons for M.B.'s seizures. Pointing to her low blood sugar, Dr. Calhoun feared that M.B. was suffering seizures because of lack of feeding.

Dr. Calhoun then told Dr. Gomez that "she was feeling red flags for possible foul play[]" because M.B. was the issue of Mr. Bakker's affair and therefore M.B. may be susceptible to mistreatment by Mrs. Bakker. Dr. Gomez noted this account of M.B.'s conception was inconsistent with the surrogacy narrative offered by Mrs. Bakker to Dr. Gomez, and that Mrs. Bakker had made other inconsistent statements. Dr. Gomez reflected on the circumstances and thought she should make a report to the Department of Child Safety ("DCS"). Dr. Gomez asked for Dr. Calhoun's input on whether to make a report. In her June 26, 2015 patient chart note, Dr. Gomez wrote "I asked at that moment if I needed to call [DCS] but [Dr. Calhoun] suggested [immediate] admission for observation under a controlled environment to see how [M.B.] acted/fed/get controlled labs."

**¶6** Dr. Gomez then moved to immediately hospitalize M.B. as Dr. Calhoun recommended. Mrs. Bakker informed Dr. Gomez that M.B. had already been admitted in the Pediatric Intensive Care Unit ("PICU") at Banner for increased seizure activity.

**¶7** Dr. Gomez then called the PICU to ensure additional testing was done, as discussed with Dr. Calhoun. Dr. Gomez spoke to Doctor Jose A. Gutierrez ("Dr. Gutierrez"), an intensivist in the PICU. Dr. Gomez stated she was concerned about Mrs. Bakker, that she had talked to M.B.'s geneticist, Dr. Calhoun, and that there were discrepancies in M.B.'s care. Dr. Gutierrez referred Dr. Gomez to Paap, Banner's Suspected Child Abuse and Neglect Program Coordinator. Paap is a master's level social worker, who also trains on topics of child maltreatment.

**¶8** Dr. Gutierrez asked Paap to follow up with Dr. Gomez and decide whether a report to DCS should be filed. Dr. Gutierrez asked Paap to do this because doctors typically do not file a report themselves, but rather request a social worker to do so. Paap is familiar with DCS as she previously worked for the department as a child abuse investigator. In addition to her education in social work, Paap was also trained by DCS in the investigation of abuse and neglect.

**¶9** As part of her evaluation, Paap contacted Dr. Gomez, who stated that the instructions and recommendations represented by Mrs. Bakker were "very different" than the ones actually given by Dr. Calhoun. Dr. Gomez also explained that Mrs. Bakker's concerns about M.B.'s condition did not always line up with the medical information. Specifically, Dr. Gomez was concerned that M.B. was facing unnecessary testing and medication. For example, Mrs. Bakker appeared to be overstating the frequency of M.B.'s seizures, because M.B.'s test results were normal and

M.B. only had one seizure in the presence of medical personnel.  Dr. Gomez also expressed concern that M.B.'s seizures could be induced by maltreatment, as discussed with Dr. Calhoun.  After talking to Dr. Gomez, Paap met with Mrs. Bakker in M.B.'s hospital room and briefly discussed M.B.'s medical history.  When Paap offered to obtain records from the various medical facilities to ensure continuity of care, Mrs. Bakker refused to sign the necessary authorizations.  According to Dr. Calhoun, when in Minnesota, Mrs. Bakker had also failed to provide any documentation regarding the genetics workup done in Arizona, which was in direct contradiction to Mrs. Bakker's statements to Dr. Gomez that she had provided documentation to Dr. Calhoun.

¶10        Based upon Paap's discussion with Dr. Gomez, Paap decided to report to DCS that M.B. may be facing unnecessary treatment and seizures induced by maltreatment at the hands of a parent.  DCS documented the report and initiated an investigation.

¶11        Appellants then sued Banner and Paap for defamation, negligence, and intrusion upon seclusion, asserting that Paap did not have the reasonable belief required by Arizona Revised Statutes ("A.R.S.") section 13-3620 to file a report of abuse.

¶12        On Appellees' motion, the court ordered Appellants to proffer a standard of care expert, as required by A.R.S. § 12-2603.  Later, the court granted Appellees' motion to strike Appellants' standard of care expert because she did not meet the qualifications required under A.R.S. § 12-2604.

¶13        The court granted partial summary judgment in favor of Banner and Paap on claims of negligence and intrusion upon seclusion, but denied Appellees' motion for summary judgment on claims of defamation resulting from malice and any damages therefrom, reasoning that there were genuine issues of material fact as to what Paap reported to DCS and whether Paap knowingly made false statements in connection with making that report.  The jury rejected the remaining claims.

## DISCUSSION

¶14        Summary judgment is appropriate when "the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990).  "We review the grant of summary judgment on the basis of the record made in the trial court, but determine

whether the entry of judgment was proper *de novo.*" *Phoenix Baptist Hosp. & Med. Ctr., Inc. v. Aiken*, 179 Ariz. 289, 292 (App. 1994) (citation omitted).

I.      Immunity from Suit

¶15      Appellants argue that the court erred when it granted Appellees' motion for partial summary judgment, because a question of fact exists as to whether Paap had a reasonable belief of child abuse.

¶16      A person who has a reasonable belief that a child is a victim of abuse may report that abuse, A.R.S. § 13-3620(A), (F), and may receive immunity from suit related to that report:

> A person who furnishes a report, information or records required or authorized under this section, or a person who participates in a judicial or administrative proceeding or investigation resulting from a report, information or records required or authorized under this section, is immune from any civil or criminal liability by reason of that action unless the person acted with malice . . . .

A.R.S § 13-3620(J).

¶17      Here, the court found "there were facts of which Paap was aware from which one could reasonably conclude that [M.B.] had been abused."

¶18      According to Appellants, as a matter of law, only a medical doctor can form reasonable belief of medical child abuse and, because Paap is not a medical doctor, Paap could not form the requisite reasonable belief and, therefore, cannot be afforded A.R.S. § 13-3620(J) immunity.

¶19      The Arizona Legislature enacted A.R.S. § 13-3620 to encourage the reporting of child abuse. *L.A.R. v. Ludwig*, 170 Ariz. 24, 27 (App. 1991). Section 13-3620 specifically provides that a social worker "who reasonably believes that a minor is or has been the victim of physical injury, abuse, child abuse, a reportable offense or neglect . . . shall immediately report or cause reports to be made . . . to the department of child safety." A.R.S. § 13-3620(A).

¶20      The requirement of a reasonable belief as a prerequisite is a "low standard," one that mandates a report "if there are any facts from which one could reasonably conclude that a child had been abused." *Ludwig*, 170 Ariz. at 27. Indeed, that low standard is intended to mandate

reports to DCS for the protection of children who may be suffering from abuse. *Id.* Once the person has a reasonable belief of abuse, a report must be made even if there has not been a medical doctor's diagnosis. *See id.* at 27-28 (noting that the reporter does not need to gather facts to establish that abuse actually exists). And any person, who so believes, even one who is not a mandatory reporter, may file a report and receive immunity. A.R.S. § 13-3620(F), (J).

¶21 Contrary to Appellants' argument that as a matter of law only a doctor can form a reasonable belief of medical child abuse, the statute allows persons to report any type of abuse or neglect without exception. The legislature could easily have imposed special requirements or limitations on reports of medical child abuse, but it did not. *See Callender v. Transpacific Hotel Corp.*, 179 Ariz. 557, 561 (App. 1993).

¶22 Moreover, under the provisions of A.R.S. § 13-3620(F), even if Paap had not been a mandatory reporter, she would have been permitted to make the report to DCS because she had information, among other things, that:

> (i) M.B.'s long-time pediatrician, Dr. Gomez, was sufficiently concerned about the likelihood that Mrs. Bakker may have been harming M.B. that she contacted Dr. Gutierrez;
>
> (ii) when Dr. Calhoun was contacted by Dr. Gomez, Dr. Calhoun also expressed "feeling red flags for possible foul play[]," regarding M.B.'s care at the hands of Mrs. Bakker;
>
> (iii) Dr. Calhoun was concerned that M.B.'s seizures could have been induced by lack of feeding;
>
> (iv) Mrs. Bakker refused to release M.B.'s medical records to Paap when confusion arose about Dr. Calhoun's recommendations;
>
> (v) Mrs. Bakker gave inconsistent information regarding the circumstances of M.B.'s conception, which gave rise to suspicion regarding potential animus from Mrs. Bakker towards M.B.; and
>
> (vi) as a result of the irregularities in Mrs. Bakker's reports of seizures and given M.B.'s medical test results as overwhelmingly normal, Dr. Calhoun recommended M.B. be hospitalized for observation in a controlled environment.

**¶23** Thus, at least three medical doctors were concerned about potential abuse and those concerns resulted in the involvement of Paap, Banner's Suspected Child Abuse and Neglect Program Coordinator. Accordingly, the court did not err in finding that Paap had received sufficient information from which she could form a reasonable belief justifying the report to DCS.

**¶24** Appellants also argue the court's determination of whether Paap had a reasonable belief of abuse was erroneous because the findings should have been based solely on the information contained in the hotline report made to DCS and should not have included consideration of Paap's report prepared for Banner or Dr. Gomez's patient chart note. Appellants argue that "[t]he immunity provided by A.R.S. § 13-3620 does not apply to what you could have reported and did not." However, all the information available to Paap at the time of the report aided her in forming her belief of the situation and in deciding whether to make a report. In determining whether Paap's belief of abuse was reasonable it was necessary for the court to consider what information Paap knew at the time of the report. The court did not err in doing so.

II. Negligence

**¶25** Appellants maintain that A.R.S. § 13-3620 creates a duty not to file a report unless there is a reasonable belief of abuse. They propose that Paap breached the duty[1] when she made a report of abuse without reasonable belief of abuse and that she did so with malice. The court found that, as a matter of law, there is no duty of care owed to Appellants.

**¶26** To prove their claim of negligence, Appellants had to prove four elements: (1) Appellees' duty to conform to a certain standard of care, (2) a breach of that duty, (3) a causal connection between the Appellees' conduct and resulting injury, and (4) actual damages suffered. *Sanders v. Alger*, 242 Ariz. 246, 247, ¶ 7 (2017). Whether a duty exists is a matter of law for the court to decide. *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 356 (1985).

**¶27** In *Ramsey v. Yavapai Family Advocacy Center*, 225 Ariz. 132, 142, ¶ 36 (App. 2010), we held that "in treating an alleged victim of abuse, a health care professional owes no duty of care to an alleged third-party

---

[1] Because we affirm the court's grant of summary judgment on all negligence claims asserted, the issue of the motion to strike the standard of care expert for the negligence claims is now moot. *See Bd. of Supervisors v. Robinson*, 105 Ariz. 280, 281 (1970) (courts do not decide moot issues).

abuser." Here, recognizing that Paap was not a treating physician or counselor, the court reasoned that, because Paap's work was taking place within a similar context and implicated the same significant policy considerations, the principles in *Ramsey* applied and "weighed against recognizing a duty relative to treating health care professionals and counselors." Correctly relying on *Ramsey*, the court found that Appellees owed no duty of care to Appellants and granted summary judgment as to all negligence claims insofar as they were based on a theory of breach of duty. We affirm the court's grant of summary judgment on this basis.

III.    Intrusion Upon Seclusion

¶28        Lastly, Appellants argue that, absent reasonable belief of abuse, the court erred in granting summary judgment in favor of Appellees as to their intrusion upon seclusion claim because, as M.B.'s parents, under A.R.S. §§ 12-2291 to -2292, -2294, they had a reasonable expectation of privacy in M.B.'s medical records and in any personal information obtained in the course of providing her with medical care and treatment. However, Appellants acknowledge that if Paap had a reasonable belief of abuse to file a report, the intrusion upon seclusion claim cannot stand.

¶29        The immunity afforded by A.R.S. § 13-3620 also precludes claims of invasion of privacy. Because we have affirmed the court's finding that Paap had a reasonable belief of abuse prior to filing her report with DCS, *see supra* at ¶¶ 15-23, and is entitled to immunity, we find no error in the court's grant of summary judgment as to the intrusion upon seclusion claim.

**CONCLUSION**

¶30        Accordingly, we affirm.

